IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUSA SAEED MUHAMMAD, *Plaintiff*, v. NANCY A. BERRYHILL, Acting Commissioner of Social Security, *Defendant*. | CIVIL ACTION NO. 18-172 |

**PAPPERT, J.** May 23, 2019

### MEMORANDUM

Musa Saeed Muhammad seeks judicial review of the Commissioner of Social Security's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Muhammad contends, among other things, that the Administrative Law Judge who presided over his hearing lacked the authority to decide his case because she was not appointed in the manner prescribed by the Constitution's Appointments Clause. The Commissioner acknowledges the infirmity of the appointment but contends that Muhammad forfeited his right to assert such a claim by not raising it before the ALJ or any point thereafter in the administrative process. Magistrate Judge Timothy Rice issued a Report and Recommendation ("R&R") in which he concluded that Muhammad had not forfeited his right to challenge the propriety of the ALJ's appointment.

Given that ruling, Judge Rice did not consider the merits of Muhammad's claims; he recommended instead that Muhammad's request for review be granted and the case be remanded to be heard *de novo* by a new ALJ. (ECF No. 25.) Upon

1

consideration of the Administrative Record,[1] Judge Rice's R&R, the parties' Objections and Responses thereto (ECF Nos. 29 & 35), the Court sustains the Commissioner's objections, overrules the R&R and refers the case back to Judge Rice to address the merits of Muhammad's claims.[2]

I

Muhammad filed for DIB on January 14, 2014. (Administrative Record ("R.") 91.) His application was initially denied on June 12, 2014. (*Id.* at 91–102.) Muhammad timely requested a hearing before an ALJ, which was held on April 21, 2016. (*Id.* at 46–87, 113.) ALJ Susannah Merritt ruled on June 29, 2016 that Muhammad was not disabled. (*Id.* at 7–25.) In denying his claim, ALJ Merritt found that Muhammad was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id*. at 25.) Muhammad requested review of ALJ Merritt's decision by the Appeals Council on July 13, 2016. (*Id.* at 166–69.) On July 31, 2017, the Appeals Council denied his request. (*Id*. at 1–6.) Muhammad was represented by counsel throughout the administrative process.[3]

---

[1] Muhammad's record, consisting of over 1400 numbered pages, was uploaded to ECF. *See* (ECF Nos. 4-1–4-11). The Court cites to the record page numbers rather than ECF document numbers.

[2] The Court reviews *de novo* the specific portions of the R&R to which a party objects. *See* 28 U.S.C. § 636(b)(1); *see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998). Here, the Commissioner objects to the R&R in its entirety. The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

[3] On July 21, 2014, Muhammad hired attorney Maria E. Harris to represent him in the Social Security proceedings, though his legal counsel has changed several times. *See* (R. 37, 35, 109–10, 122–23, 160–62).

On January 17, 2018, Muhammad filed this lawsuit. *See* (Compl., ECF No. 3). He submitted a brief and statement of issues on June 21, 2018 arguing, among other things, that he proved his inability to return to past work, that the ALJ failed to find his traumatic brain injury severe and overestimated his residual functional capacity and that the ALJ erroneously assigned insignificant weight to the opinion of the treating psychiatrist. (Br. & Stmt. Issues, ECF No. 10.) On July 25, 2018, the Court referred the matter to Judge Rice for an R&R. (ECF No. 12.) On August 13, 2018, almost two and a half years after his hearing before the ALJ, Muhammad filed his reply brief in which he challenged for the first time the constitutionality of ALJ Merritt's appointment. (Reply Br. at 1, ECF No. 15.)

Roughly two months before Muhammad asserted his constitutional challenge, the Supreme Court held in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), that the Securities and Exchange Commission's ALJs are "Officers of the United States" within the meaning of the Constitution's Appointments Clause, which states:

> [The President] . . . shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

*Id.* at 2051; U.S. CONST., art. II, § 2, cl. 2. Because the ALJ in *Lucia* had been appointed by SEC staff members, the Court ruled that his appointment was unconstitutional. 138 S. Ct. at 2055. The Court limited relief, however, to those who make "'a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case.'" *Id.* (quoting *Ryder v. United States*, 515 U.S. 177, 182–83

(1995)). It held that the petitioner had timely "contested the validity of [the ALJ's] appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court." *Id.* As a result, the Court cured the constitutional error by instructing a different ALJ or the Commission itself to hold a new hearing for the petitioner. *Id.*

II

Judge Rice recommends that Muhammad's request for review be granted because: (1) although Muhammad's Appointments Clause challenge is nonjurisdictional, it "merits consideration . . . because it impacts the validity of the underlying proceeding"; (2) Muhammad was not required under *Sims v. Apfel*, 530 U.S. 103 (2000), to preserve his Appointments Clause challenge by raising it at the initial administrative level of review; (3) even if he was required to preserve the issue, Muhammad was excused from doing so under *Freytag v. Commissioner*, 501 U.S. 868 (1991), and (4) it would have been futile for Muhammad to raise his claim before an ALJ who was "powerless to resolve it." (R&R at 2–12.) The Commissioner does not contest that SSA ALJs are "inferior officers" who, under the Appointments Clause must be appointed by the President, the Courts or Heads of Departments. (Obj. at 4 n.2, ECF No. 29); *see* U.S. CONST., art. II, § 2, cl. 2. Rather, the Commissioner contends that Muhammad forfeited his Appointments Clause challenge by failing to raise it at any stage of the administrative process and that *Freytag* does not "categorically exclud[e such challenges] from general waiver and forfeiture principles." (Obj. at 4–5, 12.)

At the time of the Magistrate Judge's decision in November of 2018, nearly every district court to address this issue in the context of the SSA held that the claimant

forfeited his right to challenge the constitutionality of the ALJ's appointment by failing to timely assert such a challenge before the ALJ. *See Abbington v. Berryhill*, No. CV 1:17-00552, 2018 WL 6571208, at *2 n.7 (S.D. Ala. Dec. 13, 2018) (collecting cases as of December 13, 2018); *Fortin v. Comm'r of Soc. Sec.*, No. 18-10187, 2019 WL 1417161, at *6 (E.D. Mich. Mar. 29, 2019) (collecting cases as of March 29, 2019). Some courts have since followed Judge Rice's approach while others have not. *Compare Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 424 n. 4 (M.D. Pa. 2019), *and Culclasure v. Comm'r of Soc. Sec. Admin.*, No. CV 18-1543, 2019 WL 1641192, at *11 (E.D. Pa. Apr. 16, 2019), *with Fortin*, 2019 WL 1417161, at *5, *and Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341, 350 (S.D.N.Y. 2019).

A

As a threshold matter, the R&R found that Muhammad's Appointments Clause challenge is nonjurisdictional. (R&R at 2.) While a jurisdictional challenge cannot be waived or forfeited, a nonjurisdictional challenge can be. *Diane S. P. v. Berryhill*, No. 4:17CV143, 2019 WL 1879256, at *13 (E.D. Va. Mar. 21, 2019). The Supreme Court and several appellate courts have analyzed Appointments Clause challenges as nonjurisdictional. *See Freytag*, 501 U.S. at 871–72 (including Appointments Clause objections to judicial officers in the category of "nonjurisdictional structural constitutional objections"); s*ee also N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795 (8th Cir. 2013) (declining "to depart from *Freytag's* general rule that [A]ppointments [C]lause challenges are nonjurisdictional"); *GGNSC Springfield v. N.L.R.B.*, 721 F.3d 403, 405–07 (6th Cir. 2013) (holding errors regarding appointment

5

of officers under Article II are nonjurisdictional). The Court accordingly treats Muhammad's challenge as nonjurisdictional and therefore subject to forfeiture.[4]

A general administrative law principle is that "courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). "[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has an opportunity for correction in order to raise issues reviewable by the courts." *Id.* The R&R acknowledges that Muhammad did not raise his Appointments Clause challenge with the ALJ or at any point in the administrative process and relies on *Sims* in declining to "judicially impose" an issue exhaustion requirement. (R&R at 3, 9.)

The issue in *Sims* was whether an unsuccessful Social Security claimant waived any issues in a later judicial proceeding that he did not present in his request for review to the Social Security Appeals Council. 530 U.S. at 105. Finding the "requirements of administrative issue exhaustion are largely creatures of statute," the Supreme Court concluded that no statute or regulation within the SSA required issue exhaustion. *Id.* at 107–08. It noted that it had previously "imposed an issue-exhaustion requirement even in the absence of a statute or regulation[ ] [b]ut the reason we have done so does not apply here." *Id.* at 108. In relying upon the

---

[4] Although some courts use "waiver" and "forfeiture" interchangeably, forfeiture is the appropriate term here where the Commissioner is arguing that Muhammad did not timely assert his Appointments Clause challenge. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'").

"inquisitorial" nature of the SSA, the Court focused its analysis on the "informal, nonadversary manner" of the Appeals Council review process and its corresponding regulations. *Id.* at 111. Ultimately, it held that "[Social Security claimants] who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Id.*

The Supreme Court's reasoning in *Sims* is less applicable to this case than the R&R presumes. The extent to which *Sims* dictates the Magistrate Judge's conclusion depends in large part on a fundamental assumption—that if a claimant was not required to raise an issue before the Appeals Council, then he must not have to raise that issue before the ALJ. *Sims*, however, specifically cautions against making just that assumption. The Court did not, though it could have, state that Social Security claimants must exhaust all issues before ALJs as well as before the Appeals Council. *Sims* expressly left open the question of issue exhaustion before ALJs, stating that "[w]hether a claimant must exhaust issues before the ALJ is not before us." *Id.* at 107; *see id.* at 117 ("Yet I assume the plurality would not forgive the requirement that a party ordinarily must raise all relevant issues before the ALJ.") (Breyer, J., dissenting). The Court could just have easily stated that its reasoning also applies to ALJs or it could have remained silent on that point. By making clear that its reasoning and holding did not necessarily pertain to issue exhaustion before the ALJs, *Sims* signaled that different concerns and analyses may apply to exhaustion requirements at the ALJ level.

Second, the Court based much of its analysis on the nature of the proceeding, namely whether it is adversarial or inquisitorial. *See id.* at 109–11. The Court

7

acknowledged that the general rule requiring issue exhaustion which prevents litigants from being "surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence," *id.* at 109 (citing *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)), carries more weight in an adversarial proceeding—or the "degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding," *id.* The Court outlined a sliding scale of sorts, with the rationale for requiring issue exhaustion at its greatest in an adversarial administrative proceeding and weakest when that proceeding is not adversarial. *Id.* at 110. The Court viewed administrative agency proceedings, particularly those in the Social Security context, to be inquisitorial rather than adversarial, citing the ALJs' "duty to investigate the facts and develop the arguments both for and against granting benefits," with the Appeals Council's review similarly broad. *Id.* at 111. *Sims* involved exactly the type of evidentiary issues which arise in such an investigative or inquisitorial context— whether the ALJ had made selective use of the record, posed the appropriate questions to the vocational expert or failed to order a consultative examination in light of "certain peculiarities in the medical evidence." *Id.* at 105–06. Given these issues, the rationale for requiring issue exhaustion was at its weakest.

    This case is far different. In his Appointments Clause challenge, Muhammad isn't quibbling over whether the ALJ properly developed the record, gave too much or too little weight to a medical opinion or otherwise erred in applying the law to the specific facts of his case. His challenge is purely legal—that the ALJ who decided against him had no authority to do so because her very appointment to the position was unconstitutional. That attack on the "structural integrity of the process itself," *Fortin*,

8

2019 WL 1417161, at *4, is as adversarial as it gets and under the sliding scale discussed in *Sims* presents the strongest case for requiring issue exhaustion. *See Diane S.P.*, 2019 WL 1879256, at *2 ("Plaintiff's arguments focusing on the non-adversarial nature of Social Security proceedings are undercut in large part by the fact that a challenge to the ALJ's capacity, at least in the form at issue here, is a matter that the ALJ has no occasion to identify as part of his or her role investigating the merits-facts.") (emphasis omitted).

Third, the regulations for requesting review by the Appeals Council differ from those governing concerns to be raised with an ALJ, perhaps helping to explain why *Sims* took care to exempt from its analysis issue exhaustion before ALJs. The Court noted that the Appeals Council's review is "plenary," unless otherwise stated, *see* 20 C.F.R. § 404.967(a), and involves evaluation of the "entire record," *see* 20 C.F.R. § 404.970(b), in deciding whether to grant review. *Sims*, 530 U.S. at 111. Importantly, if claimants seek Appeals Council review or the Appeals Council chooses to review the decision on its own, the Council will consider the entirety of the ALJ's decision. *Id.* The Court also found that a form used in requesting Appeals Council review contained "only three lines for the request for review . . . strongly suggest[ing] that the Council did not depend much, if at all, on claimants to identify issues for review." *Id.* at 111–12.

Unlike the Appeals Council review process, an ALJ will only hold a hearing if a request is made. *See* 20 C.F.R. § 404.930(b). The claimant must state the reasons he disagrees with the previous determination or decision. *See id.* § 404.933(a)(2). Whereas the Appeals Council has plenary review, generally the issues before the ALJ include those "brought out in the initial, reconsidered or revised determination that

9

were not decided entirely in [the claimant's] favor." *Id.* § 404.946(a); *see also Abbington*, 2018 WL 6571208, at *5. Moreover, the ALJ or any party may also raise new issues, even if they "arose after the request for a hearing and even though [they have] not been considered in an initial or reconsidered determination." *Id.* § 404.946(b). Further, the regulations allow for disqualification of the ALJ assigned to a claimant's case, requiring the claimant to object "at [his] earliest opportunity." 20 C.F.R. § 404.940.[5] The ALJ must then decide whether to proceed with the hearing or withdraw. *Id.* If he does not withdraw, the regulations authorize a claimant to "present [his] objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge." *Id.*

Here, following the denial of his claim for DIB, Muhammad requested a hearing before an ALJ and listed the reasons why he disagreed with the prior determination. (R. 113). ALJ Merritt subsequently notified Muhammad of his hearing date and identified the issues to be considered at the hearing. (R. 124–149); *see* 20 C.F.R. § 404.938(b)(1). Muhammad could have objected to anything about the ALJ herself or

---

[5]   The regulation reads in part:
   An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity.
20 C.F.R. § 404.940. Some district courts believe that this regulation does not require a claimant to raise constitutional concerns with the ALJ's appointment because it provides only three limited circumstances for seeking disqualification of an ALJ. *See Bradshaw v. Berryhill*, No. 5:18-CV-00100, 2019 WL 1510953, at *6 (E.D.N.C. Mar. 26, 2019); *see also Culclasure*, 2019 WL 1641192, at *8. Such an interpretation is not unreasonable, but the regulation's second sentence could also be read to give the claimant an opportunity to raise any objections he or she may have about the ALJ. In any event, it is unreasonable to conclude that a claimant who believes the ALJ has no legal authority to even hold the position will think that he or she cannot say raise such an issue because it may not technically concern alleged impartiality.

10

her identification of the issues, to which she could have addressed his objections either in writing or at the hearing itself. *Id.* § 404.939; *see also id.* § 404.946(b)(1).

B

Even if Muhammad was required to preserve his Appointments Clause challenge, the R&R concludes that he was excused from doing so under *Freytag*. (R&R at 7–8.) There, the petitioners challenged a tax deficiency ruling issued by a Special Trial Judge in the United States Tax Court. *Freytag*, 501 U.S. at 871. The Chief Judge of the Tax Court appointed the Special Trial Judge after the original judge retired due to illness. *Id*. The petitioners consented to the assignment and did not raise their constitutional challenge until their appeal to the Fifth Circuit. *Id*. at 871–72. Noting that the challenge was "neither frivolous nor disingenuous," the Supreme Court held that *Freytag* was "one of those rare cases" in which the Court should exercise its discretion to hear a non-exhausted constitutional argument. *Id*. at 879 (citing *Glidden Co. v. Zdanok*, 370 U.S. 530, 535–536 (1962)). In so ruling, the majority did not create a categorical exception to the exhaustion requirement for Appointments Clause challenges. *See id*. at 892;[6] *see also In re DBC*, 545 F.3d 1373, 1380 (Fed. Cir. 2008) ("The Supreme Court has never indicated that [Appointments Clause] challenges must be heard regardless of waiver.") (citing *Freytag*, 501 U.S. at 893).

---

[6] Justice Scalia, concurring in part and concurring in the judgment, observed that the majority did not accept petitioners' argument that Appointments Clause challenges cannot be forfeited. *Freytag*, 501 U.S. at 893. He also acknowledged that appellate courts may, in truly exceptional circumstances, exercise discretion to hear forfeited claims but disagreed that the challenge in *Freytag* was a "rare case" excused from exhaustion. *Id*. at 892–94. In his view, "Appointments Clause claims . . . have no special entitlement to review [and a] party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial." *Id*. at 893–94. Justice Scalia reasoned that "since all forfeitures of Appointments Clause rights, and arguably even all forfeitures of structural constitutional rights, can be considered 'rare,' this is hardly useful guidance." *Id*. at 893.

11

Since *Freytag*, the Supreme Court has not clarified the types of "rare cases" that are excused from the failure to raise a claim before an agency, though the Court long before *Lucia* imposed a timeliness requirement for Appointments Clause challenges. In *Ryder*, the Court held that "one who makes a *timely* challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." 515 U.S. at 182–83 (emphasis added). The Court explained that "[a]ny other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." *Id*. at 183. *Lucia* expressly reaffirmed this requirement. *See Lucia*, 138 S. Ct. at 2055 (citing *Ryder*, 515 U.S. at 182–183).

Nothing about Muhammad's case warrants excusing his failure to timely raise the Appointments Clause challenge before the ALJ and throughout the administrative process. While Muhammad's challenge is neither "frivolous nor disingenuous," *see Freytag*, 501 U.S. at 900, there is nothing rare about his case. "[R]egularly excusing forfeiture of Appointments Clause challenges under *Freytag* risks eroding the rule in *Ryder*, decided nearly four years after *Freytag* and recently reaffirmed in *Lucia*, that an Appointments Clause challenge must be 'timely' to afford the challenger relief." *Abbington*, 2018 WL 6571208, at *7. Applying *Freytag*'s rare case exception here would disincentivize petitioners, particularly those like Muhammad who are represented by counsel, from raising Appointments Clause challenges at the administrative level. Indeed, regularly permitting unsuccessful claimants to raise such challenges for the first time on judicial review would "encourage the practice of 'sandbagging': suggesting

12

or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error." *See id.* at *7 (citing *Freytag*, 501 U.S. at 895) (Scalia, J., concurring in part and concurring in the judgment).

The R&R reasons that this concern is not applicable here because Muhammad raised the issue at the "earliest opportunity"—in his August 13, 2018 reply brief, almost two months after *Lucia* came down. (R&R at 8.) The Magistrate Judge believed that Muhammad's Appointments Clause challenge (which is labeled a "*Lucia*" claim in the R&R, *see* (R&R at 2)) was "unforeseeable" prior to *Lucia* because before that decision DOJ contended that ALJs were mere employees, not inferior officers under the Appointments Clause. (*Id.* at 6.) According to the R&R, DOJ's pre-*Lucia* "shifting position" regarding the ALJs' status prevented claimants like Muhammad from realizing that they could challenge the constitutionality of a governmental agency official's appointment. (*Id.* at 8.) That is obviously not the case—the Supreme Court did not for the first time invent the right to bring such challenges with *Lucia*, *see, e.g.*, *Freytag*, 501 U.S. at 892; *Ryder*, 515 U.S. at 188; *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 513 (2010), and whatever DOJ's "shifting" litigation strategies may have been are not relevant to the inquiry. To be sure, *Lucia* may have shown that such challenges (provided they are timely brought) could succeed; but as *Freytag* and *Ryder* show, that was not a novel concept.[7]

---

[7] The R&R adds that an Appointments Clause challenge is particularly unforeseeable in this context "because many SSA claimants are unrepresented by counsel and lack any understanding of how SSA ALJs are appointed, or why it makes any difference." (R&R at 8.) Again, Muhammad was represented by counsel at all stages of the SSA proceedings, including during the ALJ hearing. *See* (R. 37, 46, 158).

13

C

Nor should Muhammad's failure to assert his constitutional challenge before the ALJ or at any point in the administrative process be excused because it would have been futile to do so. (R&R at 11–12.) The R&R states that an SSA ALJ is "powerless" to "resolve" or "decide" constitutional issues like Muhammad's Appointments Clause challenge. (*Id.* at 11.) The only support given for this point is a January 30, 2018 SSA Emergency Message that instructed ALJs to state that they "do not have the authority to rule on [an Appointments Clause challenge]." Soc. Sec. Admin., EM-18003 REV, effective Jan. 30, 2018 and revised June 25, 2018.[8] Muhammad's hearing before the ALJ was held on April 21, 2016, the ALJ found that Muhammad was not disabled on June 29, 2016, the Appeals Council denied his request for review on July 31, 2017 and Muhammad filed this lawsuit on January 17, 2018. "The fact that ALJs were directed at some later time to not address the same argument [the petitioner] has now raised has no bearing on the ALJ's or the Commissioner's ability to address [the petitioner's] Appointment Clause challenge." *Bennett v. Berryhill*, No. 2:17CV520, 2019 WL 1104186, at *11 (E.D. Va. Feb. 15, 2019), *report and recommendation adopted*, No. 2:17-CV-520, 2019 WL 1102203 (E.D. Va. Mar. 8, 2019).

Even if the Emergency Messages were relevant here, the R&R's futility analysis is incorrect. In other contexts, the Third Circuit has found exhaustion to be futile where "the administrative process cannot provide [a petitioner] with any form of the

---

[8] The Emergency Message was revised again on August 6, 2018, removing this language and instead instructing ALJs presented with Appointments Clause challenges before July 16, 2018—the date on which the Acting Commissioner ratified the appointment of ALJs by approving the appointments as her own to cure any constitutional error—to acknowledge the challenge in the record and enter them into the agency's case processing systems for any necessary action. Soc. Sec. Admin., EM-18003 REV 2, effective Aug. 6, 2018.

14

relief he seeks." *Nyhuis v. Reno*, 204 F.3d 65, 66 (3d Cir. 2000). The issue is not whether the ALJ could resolve or decide an issue of constitutional law, but instead whether the SSA, alerted to the problem by Muhammad's timely objection, could have corrected any error in the ALJ's appointment or assigned a different ALJ to preside over Muhammad's hearing.

There seems to be little dispute that this could have been done. All the Commissioner needed to do was to appoint or reappoint the ALJs herself, given that "inferior officers" such as the ALJs can be appointed by the "Heads of Departments." *See* U.S. CONST., art. II, § 2, cl. 2. This is in fact precisely what the head of the SSA eventually did. *See* Emergency Message, EM-18003 REV 2, effective Aug. 6, 2018 ("On July 16, 2018, the Acting Commissioner ratified the appointment of ALJs and AAJs and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims.").[9]

In sum, long held administrative law principles preclude the summary conclusion on the facts of this case that nothing could have been done if Muhammad raised his constitutional concerns in the administrative process, beginning with the ALJ. Exhaustion protects "administrative agency authority" by giving an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (citing

---

[9] The R&R also asserts that raising the issue would have been futile "because every SSA ALJ at the time of his hearing was improperly appointed," and Muhammad's case thus "could not have been reassigned even if the issue was raised and the ALJ had authority to address it." (R&R at 11 n. 10.) Again, however, the Commissioner could have reappointed all the ALJs herself well before July of 2018. Even if she didn't, this analysis ignores the fact that raising the challenge to the ALJ could have at least made it possible for the SSA to understand and correct the infirmity of the ALJ's appointment, or at a minimum, repetition of the objection may have led to a change of policy or put the SSA "on notice of the accumulating risk of wholesale reversals being incurred by its persistence." *L.A. Tucker Truck Lines*, 344 U.S. at 37.

*McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)); *see also Wilson v. MVM, Inc.*, 475 F.3d 166, 173 (3d Cir. 2007) ("[E]xhaustion of administrative remedies serves to promote administrative efficiency, respect executive autonomy by allowing an agency the opportunity to correct its own errors, provide courts with the benefit of an agency's expertise, and serve judicial economy by having the agency compile the factual record.") (internal quotation marks and alterations omitted). Muhammad never gave the ALJ or the SSA that opportunity.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.